AO 241 (Rev. 09/17)

# Petition for Relief From a Conviction or Sentence
# By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition.

6. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ 25.00 , you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original and   2   copies to the Clerk of the United States District Court at this address:

### Clerk, United States District Court for the Middle District
### 401 West Central Boulevard
### Orlando, Florida 32801

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9. **CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date**.

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel**.

AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Middle District of Florida |
|---|---|

| Name (under which you were convicted):<br><br>Joseph Lynn Halliday | Docket or Case No.: |
|---|---|

| Place of Confinement :<br>NWFRC, 4455 Sam Mitchell Drive, Chipley, FL 32425 | Prisoner No.:<br><br>E53444 |
|---|---|

| Petitioner (include the name under which you were convicted)<br><br>Joseph Lynn Halliday | v. | Respondent (authorized person having custody of petitioner)<br><br>Mark Inch, Secretary, Florida Department of Corrections |
|---|---|---|

| The Attorney General of the State of: Florida |
|---|

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Eighteenth Judicial Circuit in and for Brevard County, State of Florida

   (b) Criminal docket or case number (if you know):   13-CF-63830

2. (a) Date of the judgment of conviction (if you know):   03/20/2015

   (b) Date of sentencing:   04/28/2015

3. Length of sentence:   life imprisonment

4. In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes   ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:   Count I: Sexual battery on person

   under 12 years of age by person over 18 years of age, s. 794.011(2), Fla. Stat.

   Count II: Lewd and lascivious molestation on a person under 12 years of age by person over 18 years

   of age, s. 800.04(5)(b), Fla. Stat.

   Count III: Providing obscene material to a minor, s. 847.0133, Fla. Stat.

6. (a) What was your plea? (Check one)

   ☑ (1)   Not guilty        ☐ (3)   Nolo contendere (no contest)

   ☐ (2)   Guilty            ☐ (4)   Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury   ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes   ☐ No

9. If you did appeal, answer the following:

(a) Name of court:   Fifth District Court of Appeal

(b) Docket or case number (if you know):   5D15-1803

(c) Result:   affirmed in part, reversed in part

(d) Date of result (if you know):   05/27/2016

(e) Citation to the case (if you know):   Halliday v. State, 192 So.3d 630 (Fla. 5th DCA 2016)

(f) Grounds raised:   (I) The trial court erred by denying the motion for acquittal where the only evidence of lewd and lascivious conduct was an out-of-court statement.

(II) The trial court erred in admitting the victim's out-of-court statements.

(III) To the extent counsel failed to preserve any objections to the admissibility of the evidence, he committed ineffective assistance that is clear on the record.

(g) Did you seek further review by a higher state court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

AO 241 (Rev. 09/17)

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☑ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

_____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?     ☑ Yes     ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1) Name of court: Eighteenth Judicial Circuit in and for Brevard County, State of Florida

        (2) Docket or case number (if you know): 13-CF-63830

        (3) Date of filing (if you know): 06/06/2017

        (4) Nature of the proceeding: Motion for postconviction relief under Fla. R. Crim. P. 3.850

        (5) Grounds raised: Ground (1): Ineffective assistance of counsel - failure to object to hearsay evidence supporting the molestation count, which became irrelevant after the State failed to present any non-hearsay evidence in support of that count; failure to object on the grounds that the hearsay statements no longer met the criteria for admission under s. 90.803(23), Fla. Stat., as they lacked the requisite indicia of reliability.

Ground (2): Ineffective assistance of counsel - failure to discover and/or use evidence to impeach state witnesses or suggest that coaching had occurred.

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes     ☑ No

    (7) Result: Summarily denied.

AO 241 (Rev. 09/17)

(8) Date of result (if you know):   08/31/2018

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏ Yes      ❏ No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

 ❒ Yes  ❒ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

 (1) First petition: ✔ Yes  ❒ No

 (2) Second petition: ❒ Yes  ❒ No

 (3) Third petition: ❒ Yes  ❒ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

 **CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Ineffective assistance of counsel for failing to object and move for a new child hearsay hearing when the child victim recanted during her trial testimony.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Ground One attached.

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Motion for postconviction relief under Fla. R. Crim. P. 3.850

Name and location of the court where the motion or petition was filed:

Eighteenth Judicial Circuit in and for Brevard County, State of Florida

Docket or case number (if you know):     13-CF-63830

Date of the court's decision:     06/06/2017

Result (attach a copy of the court's opinion or order, if available):     Summarily denied

_____

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:     Fifth District Court of Appeal

Docket or case number (if you know):     5D18-3109

Date of the court's decision:     04/02/2019

Result (attach a copy of the court's opinion or order, if available):     Affirmed

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:   Ineffective assistance of counsel for failing to discover and/or

present evidence to suggest that coaching had occurred.

**GROUND TWO:**   Ineffective assistance of counsel for failing to discover and/or present evidence to

suggest that parental coaching of the child victim had occurred.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Ground Two attached.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ❒  Yes   ✔ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:   Raised for first time in motion for

postconviction relief

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

✔ Yes   ❒  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Motion for postconviction relief under Fla. R. Crim. P. 3.850

Name and location of the court where the motion or petition was filed:

Eighteenth Judicial Circuit in and for Brevard County, State of Florida

Docket or case number (if you know):   13-CF-63830

AO 241 (Rev. 09/17)

Date of the court's decision:  06/06/2017

Result (attach a copy of the court's opinion or order, if available):  Summarily denied

(3) Did you receive a hearing on your motion or petition?          ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  Fifth District Court of Appeal

Docket or case number (if you know):  5D18-3109

Date of the court's decision:  04/02/2019

Result (attach a copy of the court's opinion or order, if available):  Affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)  **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ❏  Yes    ❏  No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏  Yes    ❏  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?                        ❏  Yes    ❏  No

(4) Did you appeal from the denial of your motion or petition?                   ❏  Yes    ❏  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❏  Yes    ❏  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏  Yes     ❏  No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)     **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏  Yes     ❏  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ❏  Yes     ❏  No

(4) Did you appeal from the denial of your motion or petition?      ❏  Yes     ❏  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❏  Yes     ❏  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes    ❏    No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

        No

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ❏    Yes    ☑ No

    If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ❏    Yes    ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    Ernest Chang, 6767 N. Wicham Rd., Suite 400, Melbourne, FL 32940-2025

(b) At arraignment and plea:    Ernest Chang, 6767 N. Wicham Rd., Suite 400, Melbourne, FL 32940-2025

(c) At trial:    Ernest Chang, 6767 N. Wicham Rd., Suite 400, Melbourne, FL 32940-2025

(d) At sentencing:    Ernest Chang, 6767 N. Wicham Rd., Suite 400, Melbourne, FL 32940-2025

(e) On appeal:    Gray Proctor, 1108 E. Main St., Suite 803, Richmond, VA 23219-3522

(f) In any post-conviction proceeding:    Gray Proctor, 1108 E. Main St., Suite 803, Richmond, VA 23219-3522

(g) On appeal from any ruling against you in a post-conviction proceeding:    Gray Proctor, 1108 E. Main St., Suite 803, Richmond, VA 23219-3522

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?         ☐  Yes      ☑  No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?         ☐  Yes      ☐  No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

Petitioner's direct appeal concluded on May 27, 2016 with an authored opinion reversing in part and affirming in part. Retained counsel thereafter filed a 3.850 on June 6, 2017. The appeal of the summarily denial of Petitioner's 3.850 was per curiam affirmed on April 2, 2019 with the mandate following on April 26, 2019. Accordingly, the time limitation period was effectively tolled and the instant petition is timely filed.

AO 241 (Rev. 09/17)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

    (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   Vacate and set aside the convictions and sentences in this case and remand to the State court for a new trial or grant an evidentiary hearing

or any other relief to which petitioner may be entitled.

*Robert David M Love*

Signature of Attorney (if any) *FBN: 407283*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on *July 15, 2019* (date).

*Robert David MLove (for)*

Signature of Petitioner *Joseph Lynn Halliday*

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

Signator is attorney of record for Petitioner.

<u>FACTS IN SUPPORT</u>

On September 9, 2013, Petitioner was charged by information with Count I: sexual battery (victim less than 12 years of age by a person over 18), in violation of § 794.011(2), *Fla. Stat.*, based on the conduct of having his daughter ("S.H."), perform oral sex on him; Count II: lewd and lascivious molestation (victim less than 12 years of age by a person over 18), in violation of § 800.04(5)(b), *Fla. Stat.*, based on the conduct of his touching S.H. in a lewd manner; and Count III: providing obscene material to a minor, in violation of § 847.0133, *Fla. Stat.*

On March 16, 2016, Petitioner proceeded to trial by jury.

S.H. was the first witness to testify. S.H. testified that the Petitioner was her father but she could not identify him in court. (T.126).[1] She said that she and her brother would often stay overnight with the Petitioner. (T.126-127). S.H. stated that the Petitioner told her to suck his "pee pee" while they were in his room by his computer and desk. (T.127). S.H. did not know where the pee pee was located on Petitioner's body. (T.129). S.H. said she put her tongue on his pee pee while Petitioner was sitting in a chair by his computer and white stuff came out, which ended up on the floor. (T.131-132). S.H. testified that the Petitioner never touched her pee pee. (T.132). S.H. said she sucked Petitioner's pee pee on five or six

---

[1] Reference to the trial transcripts will be by the symbol "T." followed by page number.

occasions. (T.133). S.H. remembered telling her mother about the incident and said she was telling the truth. (T.134).

On cross examination, S.H. explained that she licked Petitioner's pee pee five times like a lollipop and white stuff came out. (T.136-137). S.H. said the pee pee was yucky and she did not want to touch it. (T.137). She also said the white stuff was yucky and that it never ended up in her mouth. (T.138). S.H. remembered telling the child protective team interviewer that the white stuff tasted like rotten apples. Yet, she admitted she never ate a rotten apple. (T.138-139). S.H. explained that she and her brother each had their own room at Petitioner's house and always stayed there together. (T.139-140). S.H. remembered Miss Lori, Petitioner's sometime girlfriend. (T.140). S.H. could not remember if Lori was there when she sucked Petitioner's pee pee. (T.141). S.H. said that the door was closed when this happened and she did not remember telling anyone that it was open. (T.141-142). S.H. also testified she knew Bradie (Brad Silvernail), but she did not call him daddy, and she could not remember previously being asked about calling Bradie daddy, instead of the Petitioner. (T.142-143). S.H. stated that she always had her clothes on when the incidents occurred. (T.154). S.H. said she remembered seeing a computer movie where a girl was sucking a boy's pee pee. (T.155). S.H. said she told her mother about the incident one time and had not discussed it since. (T.157-158).

Kristine Silvernail, S.H.'s mother and Petitioner's ex-wife, was the next witness to testify. Silvernail testified that S.H. brought up the incident while watching the television show, Sponge Bob, opining that a naked Sponge Bob needed to put clothes on as it was not good to be seen naked. (T.184-185). Silvernail inquired further, and S.H. responded that her daddy had seen her naked and made her lick his pee pee until white stuff came out. (T.185). S.H. explained to Silvernail that this act happened while they were watching a movie and S.H. was doing what the girl in the movie was doing. (T.186). Silvernail said she called the Department of Children and Families ("DCF") the next day, which resulted in Silvernail taking S.H. to DCF for further questioning. (T.188-189).

On cross examination, Silvernail stated that S.H. told her that she was in the Petitioner's room with him when she was made to suck his pee pee. (T.191). Silvernail conceded the word may have been "lick." (T.191). She testified that she previously had issues with the Petitioner and had called DCF several times on him in the past, but never for any issues regarding abuse. (T.192). Silvernail said she did not immediately call anyone after receiving the news from S.H., but discussed the issue with her husband, Brad Silvernail, and called DCF the next morning. (T.193). Silvernail stated that S.H. told her that she licked Petitioner's pee pee until white stuff came out in the same manner as the girl was doing to the boy in the movie. (T.195). S.H. told Silvernail that the white stuff tasted nasty but did not say where it

went. (T.195-196). Silvernail testified that she was married to Brad Silvernail around the time of the incident. (T.198). Silvernail said that S.H. was calling Brad daddy on her own volition and denied telling S.H. to refer to Brad as her daddy. (T.198-199).

Silvernail went on to state that she did not get along with Petitioner after their divorce and that she initially denied Petitioner visitation with their children. (T.199-200). Silvernail said this was resolved by the courts with a 50/50 custody split. Silvernail stated another disagreement arose when Petitioner kept the kids for Halloween 2010 – a holiday that was supposed to be spent with Silvernail – and did not return them until the next day. (T.208). Silvernail said she thereafter filed an emergency petition for full custody and it was granted. (T.209). She said that she denied visitation rights from the Petitioner at his next turn with the kids. (T.210). This disagreement was also resolved by the courts with a return to a 50/50 custody split. (T.210). Silvernail said she knew Petitioner's live-in girlfriend, Lori Kinsley. (T.212-213). She also admitted to obtaining first a temporary injunction and later full custody rights of the children following the allegations in the instant case. (T.211-212).

On redirect, Silvernail expounded further on her custody conflicts with the Petitioner. She said that on Halloween 2010 she went to Petitioner's residence, called repeatedly and received no answer. (T.216). Silvernail said she then called the Rockledge Police Department to come and resolve the issue. (T.216). She did not

remember how the kids were returned to her the next day, but she did remember immediately filing the emergency petition for full custody on the basis of Petitioner's out-of-town employment. (T.216-217). On recross, Silvernail admitted to being angry at Petitioner about the Halloween issue. (T.223).

Christie Stowers, DCF child protection investigator, was the next witness. Stowers stated that when S.H. initially disclosed the allegations about licking her father's pee pee, the interview was terminated per policy for the purpose of trying to capture the allegations in a recording. (T.234-235).

Anneli Hurley, child protection team coordinator, testified that she interviewed S.H. on camera and recognized the DVD of the interview. (T.260-262). Defense counsel objected to the playing of the video on the grounds of hearsay, cumulative evidence, and violation of the confrontation clause of the U.S. Constitution. (T.263). The Court overruled the objection and allowed the video to be played to the jury.

In the video, S.H. stated that she would stay at Petitioner's house with Tyler, Lori, and the Petitioner. (T.274-275). She said that her mother and father take turns with her custody. (T.276). S.H. quickly stated that her father makes her lick his pee pee until white and yellow stuff comes out. (T.276-277). S.H. said the first time it happened, Petitioner was sitting in a chair and she was in front of him licking his pee pee when white stuff came out and fell on the floor. (T.277-282). S.H. said he

21

was doing something with his hand to his pee pee. (T.283). S.H. said there were five (5) separate events where she had to lick his pee pee. (T.286, 303). S.H. said that Petitioner took off her clothes, put her in the middle of the room, and then he licked and rubbed her pee pee. (T.287-289, 306-308). S.H. said that Petitioner touched her five (5) separate times. (T.316). S.H. said that Petitioner showed her a girl licking a boy's pee pee on the computer ten (10) times. (T.286). Throughout the video, S.H. drew numerous depictions of the events and the layout of Petitioner's room. (T.280-281, 284, 300). S.H. stated that Petitioner did not take good care of her and her brother because he did not like going to birthday parties. (T.329). "That's why it's a bummer." (T.329). She also stated that when her and her brother got into trouble at Petitioner's house, he would yell at them and put them in time out. (T.330).

Detective Robert Weigel of the Rockledge Police Department testified that he monitored the interview with S.H. and collected her drawings. (T.364-366). Defense counsel objected to the entry of the drawings into evidence on the grounds of hearsay, relevance, and authenticity. (T.368-369). The trial court overruled the objections and allowed the drawings into evidence. (T.369, 374).

Cindy Seeley, crime scene technician for the Rockledge Police Department, testified that she collected Petitioner's desk chair, laptop, pornographic DVD's, and a soiled piece of carpet near the front of Petitioner's computer desk. (T.398-400). She sent a portion of the seat cover from the chair and the carpet to the Florida

Department of Law Enforcement ("FDLE") for testing along with DNA swabs from the Petitioner and S.H. (T.412, 415, 417).

Charles A. Badger, senior crime lab analyst for the FDLE, identified semen in the portion of the chair and linked it via DNA analysis to the Petitioner. (T.445-448). Badger also identified semen in the carpet sample. (T.450). Two male contributors were located in the carpet. (T.452). The Petitioner was linked by DNA as being one of these contributors. (T.451).

Following Badger's testimony, the State rested. (T.482). Defense counsel thereafter moved for a judgment of acquittal. (T.483). Counsel argued for acquittal based on lack of identification. (T.483). As to Count Two, counsel argued that S.H. said that the Petitioner never touched her while testifying on the stand. (T.483, 489). Counsel again argued that the playing of the S.H. interview video violated the confrontation clause of the U.S. and Florida Constitutions and constituted hearsay. (T.484-485). The trial court denied the motion, finding that the State had presented prima facie evidence of guilt and that identification had been established through witnesses other than S.H. (T.490).

The defense called the Petitioner's former live-in girlfriend, Lori Knisley, as a witness. Knisley testified she was in an on-and-off relationship with the Petitioner from September 2011 through August 2013. (T.497). Knisley stated she regularly stayed the night with Petitioner when the kids were in his care. (T.497). Knisley

described Petitioner as a strict disciplinarian with his children that also spent quality time with them playing video games and watching movies. (T.499-500). Knisley said that she had a normal sex life with the Petitioner and he never expressed any desire to engage in any sexual behavior with children. (T.504). Knisley said that each of Petitioner's children had accidently walked in on her engaged in sex with the Petitioner. (T.505). Knisley reiterated this point on cross examination and stated that S.H. had barged in the room, caught them, and then exclaimed on exiting that "I saw daddy's wienie." (T.517-518).

Petitioner chose not to testify. (T.530). Following closing arguments, the Petitioner was found guilty as charged on all counts. (T.702-703).

Petitioner appealed to the Fifth District Court of Appeal. On appeal, appellate counsel argued (1) trial court error in denying the motion for judgment of acquittal on Count Two where the video of the victim's unsworn, out-of-court statements were the only evidence to support the conviction; (2) trial court error in admitting the video of the victim's out-of-court statements as the video constituted inadmissible child hearsay following S.H.'s recantation on the stand regarding Count Two; and (3) ineffective assistance of counsel based on trial counsel's failure to make objections regarding the admissibility of evidence. The Fifth District agreed as to the first issue:

> [B]ecause uncorroborated out-of-court statements were the only
> evidence in this case of lewd and lascivious molestation as charged by

the State, we reverse Halliday's conviction on this count and remand for entry of a judgment of acquittal on that charge. We find no error in the convictions for sexual battery and distributing obscene materials, and affirm those convictions.

*Halliday v. State*, 192 So. 3d 630, 631 (Fla. 5th DCA 2016).

Postconviction counsel filed a motion for postconviction relief pursuant to Rule 3.850, *Fla. R. Crim. P.*, which was initially dismissed as facially insufficient. Counsel thereafter filed an amended motion containing two grounds. Ground One alleged that counsel was ineffective for failing to avail himself of any objections that should have led to the exclusion of all of S.H.'s out of court statements. Within the ground, postconviction counsel alleged the following:

In this case, the primary evidence was out—of—court statements from Mr. Halliday_____. 'S.H. The state presented them in the form of testimony from Mr. Halliday who claimed that S.H. reported abuse to her, and from a recorded interview by a Child Protection Team official. The effect of the hearsay evidence on the jury was obviously great, as Mr. Halliday was convicted of lewd and lascivious behavior even after S.H. in court denied under oath that it had occurred. Trial counsel failed to avail himself of any of the objections that should have led to the exclusion of all of S.H.'s out—of—court statements. Due to the importance the jury placed on these statements, there is a reasonable probability that Mr. Halliday would not have been convicted absent the cumulative effect of these errors. S.H testified first. When she denied the acts that formed the basis of the molestation charge, it was clear that the state would only present hearsay evidence that molestation occurred. It has long been settled that hearsay along cannot sustain a conviction. *Beber v. State*, 887 So.2d 1248, 1253 (Fla. 2004); *State v. Green*, 667 So.2d 756, 760 (Fla. 1995). Thus, the statements were no longer relevant to any charge for which Mr. Halliday could be convicted.

Counsel rendered deficient performance by failing to object to out—of—court statements that formed the basis of the charge of lewd and lascivious molestation. Moreover, when S.H. recanted her earlier statements on molestation, it created a problem with all of her out—of—court statements. The Supreme Court of Florida recognizes that, generally, "prior consistent statements are not admissible to bolster the testimony of a witness." *Chandler v. State*, 702 So.2d 186 (Fla. l997). The legislature has created an exception to this hearsay principle when the victim is a child who has allegedly suffered sexual abuse. Fla. Stat. § 90.803(23). A child victim's prior statement "not otherwise admissible" becomes admissible if the trial court determines that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." *Id*, Courts are directed to consider "the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate." Although the statute contemplates an initial decision based solely on review of the statement itself, it is equally obvious that a subsequent recantation is important evidence that the statement lacks the required indicia of reliability. *Baugh v. State*, 862 So.2d 756, 765 (Fla. 2d DCA 2003) (citing to Ehrhardt for the proposition that without trial testimony indicating that abuse occurred, out—of—court statements are not sufficiently reliable due to the circumstances in which they were made).

Therefore, aside from the rule that an out—of—court statement is not sufficient evidence to convict, the recantation rendered admission of the evidence of touching and licking, and arguably the entire video, error because the statement no longer bore sufficient indicia of reliability necessary for the child hearsay exception. At that point, they became inadmissible. *Cf State v. Green*, 667 So.2d 756, 760 (Fla. 1995) (citing *Jaggers v. State*, 536 So.2d 321, 325 (Fla. 2d DCA 1988) ("Once the state introduced the exculpatory testimony, the inculpatory prior unsworn statements became prior inconsistent statements and should not have been allowed into evidence, in this case, for any purpose, and certainly not as substantive evidence.")).

No tactical reason for admitting the out—of—court statements establishing lewd and lascivious molestation exists. Many times, courts conclude that a tactical reason could exist for allowing the out—of—

court statement, as it bears on the credibility of the witness. Here, however, counsel did not take that route. Counsel's references in closing to the recantation were limited to the sufficiency of the evidence supporting Count II, not S.H.'s credibility with respect to other counts. (R. 609-610, 627). Obviously this point would have been moot if the out of—court had been properly excluded in the first place.

Thus, Counsel rendered ineffective assistance by failing to object to the hearsay evidence supporting the molestation count, which became irrelevant to any material fact after the state failed to present any non—hearsay evidence in support of that count. Counsel also rendered ineffective assistance by failing to object on the grounds that the hearsay statements no longer met the criteria for admission under Fla. Stat. § 90.803(23). Without the prejudicial hearsay statements, a reasonable probability exists that Mr. Halliday would have been acquitted.

(*See*, amended 3.850 at p. 4-7).

In Ground Two, postconviction counsel argued that trial counsel was ineffective in failing to investigate, obtain, and present admissible evidence that would show the mother, Kristine Silvernail, coached S.H.'s testimony and statements to officials. (*See*, amended 3.850 at p. 7). This evidence included the following enumerated items:

1) A fifteen-page diary by Silvernail directed to S.H. - in the future - which slanders and villainizes Petitioner;

2) Medical records and Petitioner's testimony indicating that that S.H. was delivered prematurely because Silvernail was severely preeclamptic, *not* because Petitioner abused her, contrary to what she testified;

3) Silvernail lied about her sexual history and about the source of the chlamydia she gave to Petitioner at the beginning of the relationship;

4) Silvernail lied about her pregnancy status;

5) Silvernail lied about the paternity of her third child;

6) Silvernail committed identity fraud by obtaining a credit card in Mr. Halliday's name;

7) Silvernail misrepresented to the family court that Petitioner had left the state permanently and thereby obtained an award of full custody;

8) Silvernail misrepresented to the Department of Children and Family Services that Petitioner was responsible for an injury to T.H., which occurred while Petitioner was stationed overseas in Iraq;

9) Other incidents that were discovered and/or supported by evidence during the ongoing investigation of this case.

(*See*, amended 3.850 at p. 8).

The trial court summarily denied both grounds. As to Ground One, the trial court stated that the motion specified neither which out-of-court statements trial counsel should have objected to, nor what objections should have been made. (*See*, summary denial at p. 3). The court further found that this argument had been successfully presented on direct appeal resulting in an acquittal on Count Two; therefore, prejudice could not be demonstrated. *Id*. As to Ground Two, the trial court found the items of evidence inadmissible and lacking relevance. (*See*, summary denial at p. 3-4).

Postconviction counsel appealed the summary denial and filed a brief in support. However, the Fifth District Court of Appeal affirmed the denial, without opinion. *See*, *Halliday v. State*, 267 So. 3d 1029 (Fla. 5th DCA 2019).

## STANDARD OF REVIEW

A federal court may grant habeas relief only if the decision of the state court (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Title 28 U.S.C. § 2254(d)(1), (2).

## GROUND ONE

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE 6TH AND 14TH AMENDEMNTS TO THE UNITED STATES CONSTITUTION, WHERE COUNSEL FAILED TO OBJECT AND MOVE FOR A NEW CHILD HEARSAY HEARING WHEN THE CHILD VICTIM RECANTED DURING HER TRIAL TESTIMONY.

## ARGUMENT

Petitioner claims he was denied his right to the effective assistance of counsel, as guaranteed by the 6th and 14th Amendments to the United States Constitution, where counsel failed to object otherwise move the trial court for a new reliability hearing on the admissibility of the child victim's out-of-court hearsay statements, where the child victim recanted on one of the allegations of sexual misconduct during her trial testimony.

To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S.

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance is established where it is shown that counsel's acts, actions and/or omissions fell below objective standards of reasonableness governing the profession. Prejudice is established where, absent counsel's deficient performance, a reasonable probability exists that the outcome of the proceedings would have been different. *Id.*

*Deficient performance:*

Prior to jury trial, the court held a hearing pursuant to § 90.803(23), *Fla. Stat.*, to determine the admissibility of S.H.'s out-of-court, hearsay statements.[2] The court heard testimony from several of the State's prospective witnesses and watched a video recording of the interview conducted by the child protective team ("CPT"). During that CPT interview, S.H. made several statements that were inconsistent with previous statements she had made during the interview and to other hearsay witnesses. Said inconsistencies include how many times the sexual acts occurred, who was in the apartment when they occurred, whether she told her mother after the first time it happened, whether she told her brother it happened, whether the door was opened or shut when it occurred, what position she was in when it occurred, etc. S.H. also alleged that, in addition to Petitioner forcing her to perform oral sex on

---

[2] Under Florida law, child hearsay is recognized as an exception to the hearsay rule in which the availability of the declarant is immaterial. For a child hearsay statement to be admitted as substantive evidence under § 90.803(23), the statement must meet two specific reliability requirements: (1) the source of the information through which the statement was reported must indicate trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability. *See id.*

him, he would often perform oral sex on her as well. S.H. was very descriptive of the instances where Petitioner allegedly performed oral sex on her in the CPT interview, stating that Petitioner "licked her pee pee and was rubbing her pee pee" (CHT.81-82).[3] S.H. described that Petitioner would ask her to get naked and then would tell her "I'm going to rub your pee pee." (CHT.82). S.H. said Petitioner "licked her pee pee in the middle and he didn't say anything about it." S.H. stated that it "felt bad" when Petitioner licked her pee pee and that it "tickled" when he rubbed her pee pee. (CHT.84). She described the feeling when Petitioner rubbed her pee pee as both "Nasty and "Ticklish" (CHT.119). S.H. said it felt like she was "licked by a horse" when Petitioner performed oral sex on her. (CHT.119-120).

At the conclusion of the hearing to determine admissibility of the out-of-court hearsay statements, the trial court did note there were some inconsistencies in some of the things that S.H. said, but determined those inconsistencies to be a question of weight rather than affecting admissibility. (CHT.163). The court found that S.H. knew the difference between a truth and a lie, that she was intelligent, and that her recollection seemed unrehearsed. (CHT.162). The court further found that she was descriptive, stating:

> She was descriptive. I'm not going to go through all that but she was descriptive and she talked about pee pee, her pee pee, her daddy's pee pee, stuff that she saw, white stuff, yellow stuff. Described him -- her

---

[3] Reference to the December 14, 2014, transcripts of child hearsay hearing will be referred to by the symbol "CHT" followed by page number.

licking and at one point she did use the word suck her daddy's pee pee *and that he licks her pee pee and rubs her pee pee and made a motion with her hand that was demonstrative of that.*

(CHT.162) (emphasis added). The court concluded:

> In looking at the statute, I find that the method or circumstances is not, I repeat not, indicative of a lack of trustworthiness. The child is less than sixteen years of age. She's describing acts of sexual abuse and of offenses involving an unlawful sexual act and contact and perhaps penetration.

(CHT.163).

At jury trial, S.H. was the State's first witness. The trial testimony given by S.H. only highlighted further inconsistencies with her out-of-court hearsay statements. Most importantly, contrary to her statements during the recorded CPT interview, S.H. testified that the Petitioner *never* touched her pee pee. (T.132).

At the conclusion of S.H.'s testimony and prior to any other witnesses coming in, defense counsel should have objected to the introduction of any out-of-court hearsay statements on the basis that the child victim had recanted with respect to one of the charged sexual acts, and therefore said out-of-court hearsay was unreliable and lacking trustworthiness. Defense counsel should have immediately asked the court to revisit its previous ruling on the admissibility of the child hearsay statements. Counsel did not. Counsel's failure in this regard amounts to deficient performance under *Strickland*.

*Prejudice:*

Petitioner was highly prejudiced by defense counsel's failure to challenge the introduction of the child hearsay statements after the child victim recanted during her trial testimony. After S.H. testified, the jury heard otherwise inadmissible testimony from Silvernail, Christie Stowers, Anneli Hurley, and Robert Weigel, regarding the out-of-court child hearsay statements. Additionally, the recorded CPT interview was played in its totality, and the jury heard S.H. describe the false sexual acts which she had recanted earlier during her trial testimony. The jury must have accorded great weight to the recorded CPT interview, because they convicted Petitioner of the lewd and lascivious charge in Count 2 *notwithstanding the fact that S.H. recanted those allegations*.

Had counsel lodged the appropriate objection immediately after S.H.'s trial testimony, the trial court would have revisited the matter of the admissibility of the child hearsay outside of the presence of the jury. Faced with this new, alarming evidence that the child victim had previously been untruthful about such a serious sexual allegation - *an allegation which the trial court gave specific credence to in deciding to admit the child hearsay statements* - a reasonable probability exists that the court would have determined that the child hearsay lacked the trustworthiness and reliability required to be entered as substantive evidence under § 90.803(23). The court would have excluded the admission of the child hearsay, which necessarily

would have excluded every other State's witness from testifying, as well as barred the introduction of the recorded CPT interview. Ultimately, the Petitioner would have received an acquittal on all charges because the State's entire case was comprised of the untrustworthy and unreliable child hearsay.

Accordingly, this Court should find that the state court's decision affirming this claim was an unreasonable application of *Strickland*, vacate the convictions and require a new trial. Alternatively, Petitioner requests an evidentiary hearing.

<u>GROUND TWO</u>

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE 6TH AND 14TH AMENDEMNTS TO THE UNITED STATES CONSTITUTION, WHERE COUNSEL FAILED TO DISCOVER AND/OR PRESENT EVIDENCE TO SUGGEST THAT COACHING HAD OCCURRED.

Petitioner claims that defense counsel rendered ineffective assistance for failing to discover and/or present evidence which would suggest that victim coaching had occurred.

*Deficient performance:*

Petitioner's relationship with the child victim's mother, Kristine Silvernail, continued to deteriorate in the years following their divorce. She initially denied Petitioner any visitation with their children. After a legal battle, the court ultimately resolved the matter by awarding Petitioner a 50/50 custody split. When Petitioner kept the kids for Halloween in 2010 – a holiday that was supposed to be spent with

Silvernail – and did not return them until the next day, Silvernail immediately filed an emergency petition for full custody and it was granted. She retaliated by denying visitation rights from the Petitioner at his next turn with the kids. Her vindictiveness resulted with the court granting a return to a 50/50 custody split. Following the sexual allegations in the instant case, Silvernail obtained a temporary injunction, followed by full custody rights of the children.

During closing argument at jury trial, defense counsel attempted to present a coaching defense, imploring the jury to find that S.H. was coached by Silvernail to make these accusations against Petitioner as part of their ongoing custody battle:

> May it please the Court, counsel. Out of the mouth of babes *did your mom help you remember what to say?* and on the stand on Wednesday on one of my recross examinations [S.H.] acknowledged, *yes, mom talked to her about what to say before the interview…*
>
> … That mother, Kristine Silvernail, is not an eyewitness to any of these allegations but, ladies and gentlemen, *she has the motive and the ability to coach her daughter to make these accusations and to accomplish what she wants and that is to obtain full custody.* (T.592-94).
>
> \*   \*   \*
>
> Same thing when you get to the CPT interview. You saw the interview in its entirety. We fast forwarded through one break but you saw the interview in its entirety. Come in, small introduction, qualify her, so tell me about your daddy. The first thing she blurts out, daddy makes me lick his pee pee. Okay. Daddy did a great job telling her don't tell anyone. If that's all it takes, tell me the difference between the truth and a lie and your child just blurts out. *And that comes back to my theme of getting her to tell you, yes, mom helped me remember what to say during the interview.* (T.619-20).

* * *

I don't want to be offensive to anyone but, you know, young children believe in Santa Clause. They believe in Santa Clause because we tell them. We give them gifts and we write that the gift is from Rudolph or from Santa and for years until they get older and they can understand and comprehend, they believe it. *A five year old child if the mother or someone else says hey, Santa came last night, did you here Rudolph's footsteps on the roof.* You know what that child is likely to respond? Yeah, I heard Rudolph's footsteps. Rudolph didn't step on the roof but that child very well could repeat that and believe it simply because they're told.

At the very beginning of that video [S.H.] says -- there were -- sorry, I'll withdraw that. No, there it is. Somewhere at the very beginning of the video during the qualification of truth or a lie [S.H.] also says we already talked about that at our house. This is a CPT interview a week or ten days after the police get involved. And again unprompted this is [S.H.] telling the interviewer we already talked about that stuff at our house. *What else did they talk about at home. What else did mom help her to remember.* (T.622-23).

* * *

Coming back, I made a point, right at the very beginning of the interview the interviewer says, on the video says talk to me about daddy and her immediate response without any prompting immediate disclosure, boom, daddy makes me lick his pee pee. She couldn't wait to get it out. *Coaching from mom or something else*. I guess that's as spontaneous as it gets.

Ladies and gentlemen, it is the State's burden to prove this case to you beyond and to the exclusion of every single reasonable doubt. Do not convict based on the charges, the nature of the charges or the seriousness of the charges. Don't convict on mere allegations. *Kids can be coached. Kids can be influenced to believe that certain things happened when in fact they did not*. (T.626).

Yet, for all of counsel's effort to paint a picture of parental coaching, the trial was void of any substantive evidence that would support such a theory. Defense counsel failed to discover and/or enter the following:

1) A fifteen-page diary by Silvernail directed to S.H. - in the future - which slanders and villainizes Petitioner;

2) Medical records and Petitioner's testimony indicating that that S.H. was delivered prematurely because Silvernail was severely preeclamptic, *not* because Petitioner abused her, contrary to what she testified;

3) Silvernail lied about her sexual history and about the source of the chlamydia she gave to Petitioner at the beginning of the relationship;

4) Silvernail lied about her pregnancy status;

5) Silvernail lied about the paternity of her third child;

6) Silvernail committed identity fraud by obtaining a credit card in Mr. Halliday's name;

7) Silvernail misrepresented to the family court that Petitioner had left the state permanently and thereby obtained an award of full custody;

8) Silvernail misrepresented to the Department of Children and Family Services that Petitioner was responsible for an injury to T.H., which occurred while Petitioner was stationed overseas in Iraq;

9) Other incidents that were discovered and/or supported by evidence during the ongoing investigation of this case.

*Prejudice:*

Petitioner was highly prejudiced by defense counsel's failure to discover and/or introduce the foregoing items of evidence in support of the defense theory

that the child victim was coached by Silvernail as part of an ongoing custody battle. Counsel made the argument, but it had no substance, no evidentiary meat for the jury to digest and return a verdict of not guilty.

Had counsel supported his case with substantive evidence, a reasonable probability exists - especially in light of all the other inconsistencies in the case - that the jury would have found Silvernail engaged in parental coaching and would have acquitted Petitioner of all charges.

Accordingly, this Court should find that the state court's decision affirming this claim was an unreasonable application of *Strickland* and/or was based on an unreasonable determination of the facts in light of the evidence presented, vacate the convictions and require a new trial. Alternatively, Petitioner requests an evidentiary hearing.